Page 17 of 6273 N.L. Henry, U.S. Office of Personnel Mgmt. Data, Security, Breach, and Litigation. American Federation of Government Employees. A.N.L. C.I.O. N.L. National Treasurer Employees Union. N.L. Personnel. Personnel Mgmt. N.L. Page 17 of 6232. Henry, U.S. Office of Personnel Mgmt. Mr. Patterson for the intelligence. Ms. Parsons for affidavit U.S. Corp. N.L. Ms. Monroe for affidavit C. O.U. Reverend Susan P. Good morning, your honors. Good morning. I want to just let you all know that for planning purposes, we will take a brief recess between the two cases. Okay? Okay. Thank you. May it please the court, Pete Patterson to the class plaintiffs. This court must reverse for three reasons. First, plaintiffs have standing under this court's decision in a P.S. given that their sensitive personal information, including their social security numbers, were intentionally and successfully targeted by data thieves. Indeed, there is no case from any Federal Circuit Court of Appeals finding a lack of standing when data thieves intentionally and successfully targeted social security numbers. Second, I mean where, for instance, in the Third Circuit, there was a data breach case in which there was a breach, but there was no evidence that any information was actually exfiltrated or gotten by the data thieves. Okay. So the mere breach of this- The transfer of data out. The transfer of the data out, so now you have the sensitive personal information in the possession of hostile actors who intentionally targeted that information is a line once it's crossed that no Federal Circuit Court of Appeals has held that there is a lack of standing. Now, in the P.S. it was based on the finding of substantial risk of a harm- Yes. Such as identity theft. Yes. Now, I guess, let me tell you, my reaction to this case is that the day after the breach became known, there was a very reasonable fear of identity theft. But that after some time had passed, I'm not sure what that time is, that fear became most implausible because of the reasons relied on by the district court, particularly the ratio between apparent identity theft or similar things suffered by people whose data had been taken and just ordinary susceptibility to identity theft of ordinary Americans completely independent of this. Okay. Well, so, first of all, Your Honor, there was at least one of our plaintiffs, Ms. Flynn, alleged that she purchased credit protection services in July 2013 immediately upon the announcement. And I agree that that was reasonable at the time when OPM announced that they were going to provide services. This is at JA 151. They said these services are tailored to the potential risks of this particular incident. So, OPM itself acknowledged that they were doing this. I completely agree with you at that point. Okay. And then beyond that, it's at least plausible at the pleading stage still that these additional incidents of identity theft that plaintiffs suffered were attributable to the hack. And there's no reason to think that identity thieves that have perpetrated this type of attack would then go out and commit crimes in a way that would make detection easy. So, they've, you know, this was a nationwide class of plaintiffs that was breached. The fact that the harms were felt nationwide doesn't undermine the likelihood that it was from this breach. So, I understand your position. Well, and in addition, the one other thing I wanted to mention is the thing that we asked you to take judicial notice of is the government is now entering into plea agreements with identity thieves. And part of those agreements say that the victims were victims of this data breach, implying that that is perhaps where the ultimate source of the data. So, we would submit that plaintiffs are at a substantial risk of harm still. But at any rate, we're asking for damages. We're not asking for injunctive relief at this point. Can I help follow up on the concern about the passage of time? First of all, I guess that doesn't affect the damages that occurred in your first answer. But at this early stage in the proceedings, what is known about how you have that act, when they happen? They can happen, you know, months if not years later. And the consolidated amended complaint, I believe, was filed less than a year after these breaches were announced. So, it's entirely plausible to say that the harms that are recited in that complaint happening in the months immediately following the announcement of the hack were attributable to that hack. Is it an ongoing risk in the sense that the information they have, I mean, people may wait for identity protection services to end. Yes. They see a certain time period on that. Does that happen, or is it something about the nature of the information here, social security numbers, date of birth, fingerprints, that those will be just as good later? Yes, those will be just as good later. And I think one indication is, you know, Congress, in the Consolidated Appropriations Act of 2016, said that these victims are entitled to 10 years' worth of identity theft protection services. So, that's one indication of, well, it's at least, you know, Congress thought 10 years at a minimum was a reasonable time. There are bills being proposed now that extend a lifetime. And what is particularly interesting is Congress defined the class of people entitled to those benefits as those that had their social security numbers stolen. That's in Section 632 of the 2016 Consolidated Appropriations Act. So, that social security number is the key point in this case, because that's not something like a credit card, that if a credit card is stolen, you can, you know, call your credit card company and cancel it, and the threat is for the most part over. That's what happened in the Eighth Circuit case when there was no standing. There was credit card information was breached, but there was no personally identifiable information like social security numbers that were stolen. So, that's what we believe is key here, and that's the line that, as I said, has been drawn. If you look at the decisions in the Court of Appeals that can rationalize them, if intentional and successful targeting of social security numbers in every instance has resulted in standing. Did any of your clients have fingerprints taken as well? I believe definitely members of the class have. I don't know if we've specifically alleged that the plaintiffs in this case have. Birth certificates? I don't know. It's at a minimum social security numbers and data for everyone. And then for people that filled out the SF-86, which we specified that they have, and as you all I'm sure know, there's a plethora of information that goes into that SF-86 to facilitate the background check, including addresses for the past 10 years, if not back to 18, and employment history and all sorts of material. So, that should establish standing, we submit, and with respect to key point, that's all we need. Of course, against the government, under the Privacy Act, we need actual damages. But once you find that we're at a substantial risk of harm, we submit that the actual damages follow, because A, as I mentioned, the mitigation expenses are reasonable, the initial ones at a minimum, if we're at a substantial risk of harm. And B, if we're at a substantial risk of identity theft, it's at least plausible at this stage that the completed identity theft that has happened is attributable to this breach. I'm sorry, the completed identity theft? Yes. So, we, there's one that, I'm sorry, assuming causation. Yes. Actual use of the person's name for some fraudulent purpose? Yes, exactly. So, we've had fraudulent tax returns filed. We've had fraudulent loans taken out in the plaintiff's name. We've had- Okay. Assuming the causation. Yes. That link is established. Right. And so, I guess the point I'm trying to make is that if you accept that there's a substantial risk, it makes sense that it's at least plausible that when that risk comes to fruition and people actually have their identities stolen, that it would be attributable to this act. Again, we're at the motion to dismiss at the pleading stage and- is markedly lower than the incidence for Americans generally. So, the question is what if that were plainly established? Yes. Well, that could be an issue at summary judgment. You're right. But we submit that at the pleading stage, when we have, you know, multiple instances of actual identity theft, that it is plausible to attribute that to this act. Especially, again, when the government is offering services saying they're tailored to this particular incident and when they're entering into plea agreements with criminals who have utilized the data from victims of this breach. I'm not sure that what the government does is that appropriate because the government has all kinds of purposes, more complex and multifaceted, than making sure that people who have a legitimate claim are satisfied with that legitimate claim. I mean, usually they've done that by writing the statute and setting up a judicial system. Right. So, all I'm saying is that given those things, it's plausible that we're at a substantial risk. I'm not saying it proves it beyond a reasonable doubt or anything like that. The government may have other purposes, but it contributes to the plausibility of our allegations. One other point on the Privacy Act. The district court thought that only unreimbursed identity theft incidents could constitute actual harm. We submit that's incorrect because anyone that's had their identity stolen and used... You don't need to. In your theory, you don't need that, do you? I mean, that's your argument that your clients have paid for credit protection services... Yes. ...for which they haven't been reimbursed, right? Yes. That's irrelevant, right, to your... Yes. There are some clients that have not done that, but even with respect to those, if you have your identity stolen, you're either going to lose money from that fraud incident or you're going to spend a substantial amount of time and or money to resolve that situation. And as the Beaven case held in the Sixth Circuit, lost time is a pecuniary harm for purposes of the Privacy Act. That's actual damage. That's compensable. I'm almost at my rebuttal time. I was going to ask you to go to a key point. Yes. I was going to turn to a key point really quickly here. And contractor immunity protects contractors only for ministerially following the directives of the government. It does not protect contractors for their own independent wrongdoing, which is what we've alleged key points independent wrongdoing was a causal factor. Is there a case that actually says that? The Boyle case says that pretty clearly, but it's also implied... Is that a helicopter case? The Boyle case is a helicopter case, yes. But, of course, that case says it implicitly, right? Because the court held there was no negligence. The court held that there was no negligence in that case, but it pretty clearly the reasoning decision was, well, if the government had just ordered this off the shelf and not specified that the door opened outward, that there would have been no immunity in that case. And really what the government is asking for, or what the key point is asking for here, is what Campbell-Ewald rejected, which is basically anything under the umbrella that we do of a government contract, whether it's specifically directed that we do it that way or not, we get immunity. That doesn't depend on the statutory scheme. Here you have a very complex statutory scheme with a particular set of damages provided against OPM with an express provision that contractors are to be brought in under that scheme and specifically required to follow it. A massive holding saying it's a privacy act itself doesn't create a cause of action against other parties, against parties other than OPM. And the point made in Boyle that something that a kind of liability that foreseeably will substantially increase the costs to the government of the contracting process because the potential contractors are going to demand compensation for it in advance is inconsistent with the contracting process. Here, I don't think that's true generally, but I think it seems to me that here we have a problem in getting around the exact scheme set up by the statute providing a minimum of $1,000 for each instance of a particular type of damage, but absence of damage except for intentional willful. And so it seems to me that what Congress seems to have intended suits against OPM. If the contractor causes trouble, OPM can sue the contractor. Well, you know, I would submit this is exactly on all fours with Boyle because there you had the Federal Tort Claims Act, which Justice Scalia relied on in that case and said, you know, a discretionary decision by the government. So, for instance, the discretionary decision to design the helicopter so that the door opened outward, you could not have sued the government for that if they had kept the manufacturing in-house rather than contract it out. And therefore, we're not going to hold the contractor liable for that because you're really attacking the government's decision and you could not have attacked the government's decision so you can't get at it through the contractor. But here we're alleging that Key Point was negligent and did wrong independent of what the government instructed it to do, that it had faulty data security measures that independently were a causal factor in the breach. We're not raising a Privacy Act claim against them. If you're raising a claim, it creates much broader liability for Key Point than a barred Privacy Act claim would. And that would really create a problem in terms of the overall purpose of the Privacy Act. Well, in my response, and I apologize if this wasn't clear, but in Boyle, the holding there that if the government had just ordered it off the shelf would have created much more liability for the contractor than would have been available against the United States. So it was a similar sort of, and I think that's what the court in Campbell-Ewald was getting at, is just because you're a government contractor. And again, this is a, and I see my time, I'm into extra time, but this is a judge-made immunity doctrine that they're saying we're trying to displace common law rights, statutory rights that everyone acknowledges that, but for this immunity doctrine, you could have brought these claims against Key Point. So we're saying we're going to displace all of those because of the government interest in contracting. And it's the rationale in Boyle that explains why we're going to do this in this narrow instance when it's what the government has directed you to do. Okay. Thank you. Good morning. May it speak to the court. Sonia Carson for the government. As to the parts of the argument that affect OPM, the court left off with the Privacy Act. And so I'd like to start there because sovereign immunity is an independent threshold basis on which the district court correctly dismisses the complaint. It's not enough for the closing counsel, Deb, to say that actual damages follow automatically from the risk of harm. As the Supreme Court explained in Cooper, to have actual damages, a plaintiff must allege specially pleaded pecuniary harm. What about the member of the class who went out and bought some sort of protection? Kelly Flynn. So Kelly Flynn alleges that she purchased credit monitoring in July of 2015. The credit monitoring was available for free in June of 2015 for individuals who were affected by the personnel records incident. Recall that there are two incidents at issue here. And Ms. Flynn does not allege which incident she believes she was involved in or compromised her information. But she obviously thought, even with the government-provided insurance, her own insurance was necessary. And we're at the motion to dismiss stage. So at the motion to... Well, Ms. Flynn alleges only pecuniary harms of $10 a month in credit monitoring. And a self-inflicted harm, as we've discussed, is not sufficient... If there's no risk of identity theft, but if we think there's a risk of identity theft, then it's not. If we think she's sufficiently pleaded a risk of identity theft, then it's not self-inflicted. No, I disagree, Your Honor, because even if she pleaded... Because it would not be an out-of-pocket loss. She cannot manufacture actual damages under the Privacy Act by electing to pay for something that she received for free, regardless whether it is connected to a reasonable risk of future identity theft. Did she receive that for free at the time she purchased it? Was she already receiving it? Well, the point is that she has to allege that she was not receiving it for free, and what her allegations say... She has to probably allege she wasn't getting it for free? Why would she have to do that? It's alleged at this expense, and you may come in and respond to it, but... Well, so she has to allege that she suffered an out-of-pocket loss. And our basic point is, you do not experience a loss if you decide to pay for something that you are already getting for free. In other words, you basically believe that what you can buy in the market is materially superior to what you're offered for free. In those circumstances, there may well be a stronger argument that there's indeed a loss. But again... We don't have the answer to both questions, do we? We don't have the answer, and the Supreme Court explained in Cooper that special damages, which are the only damages for which a sovereign immunity waiver is available under the Privacy Act, have to be specially pleaded and proved. It's not enough, even for defendants. Judge Tatel, as your opinion for the court in Browning explained, it's not enough for plaintiffs to merely plead information that would give defendants notice as to the type of damages they were relying on. It's not enough to say, I have business or marketing or other expenses. You have to show... Here she identified exactly what she had purchased, credit monitoring services. But what more should she say? So she should have said... What more should she say? So she should have said, I was affected only by the background investigation records incident, because it is only for that incident that credit monitoring first became available in September of 2015. Individuals affected by the personnel records incident, which was a separate incident, had free credit monitoring available to them in June of 2015, one month before she says she purchased it for herself. And so whether or not the court thinks that her fear of future identity theft is reasonable under the circumstances, it is incumbent on her to show that her actual damages constitute losses that are, of course, proximately caused, not just priceable, but proximately caused by the incidents of which she complained. It sounds like a fact dispute to me. I mean, she's made this allegation. I made these expenses in direct response, concrete expenses in direct response to this breach. And then your argument is, well, we don't think you needed to. Why is that appropriate at this stage as opposed to, she's going to say, I think I did need them? Well, because the question at the pleading stage is not whether she thinks she needs them. The question at the pleading stage is whether or not her injuries were self-inflicted and to show that they were not. No, she reasonably believes she needs them. They're not self-inflicted. She needs them to protect against this threat. So what she has to do then is explain, and look, this is not a high bar. It's not like returning complaints into summary judgment motions at this point. You have to allege every single particular fact with every caveat and nuance that can be thought of. It's not at all. When the breach happened, they took stuff that's incredibly identifying to me, great risk of identity theft. And I went and got my own protection. I'm not trusting the government so much right now. So even on that articulation judgment, her allegations fail at the first stage because she doesn't identify which breach she was affected by, which just doesn't take discovery or any other factual development to show. She would know based on the notice that she got from OPM. And our point is only that for her injury... No, but the point is even if she was in the one where you were already providing service, if they buy it because they want to protect themselves, not trusting the government to protect them right now, but given the government's screw-up in this situation, the allegations, this is just an allegation at this stage, then why isn't that enough of an allegation to get past this early stage? Because the Supreme Court in Cooper was not focused on whether or not anybody trusted the government or whether or not their reaction was reasonable. The court explained that what is necessary for actual damages for a sovereign immunity waiver, and of course in sovereign immunity the question is whether Congress has unequivocally authorized plaintiffs to seek a particular kind of damages. The question is whether a plaintiff has alleged out-of-pocket loss. And our basic point is that you are not at a loss if you elect to pay for something that the government has given you for free. And if your argument, Judge Williams, as you posited, is that you wanted something that was not available to you for free, it is still your duty under Cooper to specially plead why it is that your injury was not self-inflicted. And of course it's worth noting we are talking about one plaintiff out of 38 individual plaintiffs. And so whatever the court concludes with respect to Ms. Flynn, and it's worth underscoring she has to show not only actual damages, but actual damages that were proximately caused by the incident. We are nowhere near a sovereign immunity waiver for any of the remaining ones, particularly in light, Judge Williams, as you observed, of the allegations of fraud and the general susceptibility of individuals to fraud, which is highlighted by Kelly Flynn's own assertions. She says, for example, that her husband, whose information she doesn't allege OPM had, was also the victim of fraud. She alleges fraud involving her without providing any specificity about when the fraud occurred, which under this court's decision in Arpaio clearly is not enough. A plaintiff cannot just say that two things happened in sequence and require the court to accept the inference that they are connected. And so here, for multiple reasons, whether you interpret her claims under the rubric of sovereign immunity or as a matter of standing, we simply are not near what she, the person the plaintiffs have put forth as their strongest individual class representative, would need to say at the pleading stage in order to survive a motion to dismiss. But, Ms. Carson, I want to ask you about the district court's finding that the violation was knowing and willful. I read your brief, and I have to say that given the allegations in the complaint, it's hard for me to see any basis for us reaching a conclusion different from the district court. How would you make the argument? So, of course, the court doesn't need to reach the conclusion. But if we don't agree with you on the question of whether there's been pecuniary damages, we do have to address that issue, right? Well, the district court's analysis was flawed because the district court relies solely on cases that found effectively liability for mere negligence and are pointed under the privacy act. Well, forget the cases she relied on. The allegations in this complaint are, you know, that the agency long knew that it was vulnerable. Well, these are the allegations in the complaint. Long knew that it was vulnerable to a hacking attack, that its own inspector general had warned it again and again about its vulnerability and it didn't do anything. So the allegations in the complaint, Your Honor, are that OPM didn't respond quickly enough to its inspector general's discretionary recommendations. And this court has explained, including in the Perry case, that because an agency's actions could be characterized as delayed or fickle is not the same as willful and intentional behavior, which requires, as this court explained in Maybach, for the agency to lack any grounds to believe that its conduct was lawful. It's not seriously disputed here. I don't think it can be disputed that OPM, over time, has done a great deal to improve its cybersecurity measures, but it continues to engage in the areas... Well, security rights didn't work so well in this case. I mean, this is a huge loss of personal information. Millions of people. But the question, the court, of course, is aware of, for the Privacy Act merits purposes, is whether the agency's conduct was willful and intentional. And here, even if what the plaintiffs have alleged arises to negligence, that is not sufficient to meet the Privacy Act's demanding standards when the court is inquiring whether an agency failed to establish appropriate standards that allow the agency to consider the technological feasibility of their implementation, the costs, the benefits in light of the risks to which the agency is aware. And in the face of recommendations that were explicitly discretionary, they are styled as recommendations. Is this factual issues that were developed by a senior judge in the trial? No, Your Honor, because for purposes of this argument, our argument is that the allegations, even if accepted as true, do not show a willful or intentional violation because what they have pled is a failure to respond more expeditiously to discretionary recommendations in the face of what they even say are continued efforts by the agency to attend to and improve its cybersecurity measures. Okay, thank you. Thank you. We'll hear from Keith in a moment. Good morning, Your Honors, and may it please the Court. I'm Jason Mendrow. I'm here today on behalf of Keypoint Government Solutions. Keypoint is in this case because it was performing the work of the federal government pursuant to a valid federal contract. If OPM is used... But it's alleged that the company performed it negligently. That's correct, Your Honor, and that would not... It was a motion to dismiss. That's right. But under the precedent of the Supreme Court dating back now close to... Was that Boyle? I'll address both Boyle and Ursley. I think the argument that the plaintiffs have just made to the Court is that contractor immunity should be confined so that it only applies to ministerial acts directed step-by-step by the government. No, we don't have to decide that. All we have to decide is whether or not it doesn't apply where there's negligence. That's the issue here. The... Well, that's what you need to focus on. Right. Because it's a motion to dismiss. They allege negligence. So the negligence... The negligence cite Boyle, which said that the reason there was no contractor liability there was because the company was performing, building its helicopters in accordance with specifications issued by the government. Right. It would have been a different case if they had not performed in accordance with those specifications negligently. Isn't that a logical conclusion? Well, the problem with the plaintiff's argument, Your Honor, is that it fails to apprehend that there are two distinct defenses for government contractors. One is preemption under Boyle. And, of course, preemption relies on a conflict between federal prerogatives and state law. But Ursley immunity is quite different, and the Court doesn't need to look any further than the very first footnote of the Boyle decision to see that Justice Scalia specifically stated that he wasn't addressing contractor immunity in that case. The Fourth Circuit, on multiple occasions, has also distinguished between Boyle preemption on the one hand and contractor immunity under Ursley on the other. The Court can find that in the KBR burn pit litigation and also in Cunningham v. General Dynamics. There are two distinct doctrines. Under the Boyle doctrine, it is true that the Court will look for a conflict, but the Boyle doctrine wouldn't even extend to federal claims because it is only a preemption doctrine. Ursley immunity is broader. What he did with Correctional Services v. Malesko, which was quite explicit reference to Boyle, and in the context of an opinion saying, don't worry, you can sue these government contractors another way, unless they're operating pursuant to explicit compliance with their instructions, see Boyle. That's correct, Your Honor. But that footnote, which comes at the very end of the Malesko decision, was applying the preemption. It doesn't matter that it's at the end. No, it doesn't. I certainly agree with that. The point that I want to make is that the Court was addressing preemption. The Court was deciding the question, do Bivens claims apply to entities? It wasn't addressing preemption. It was discussing why we don't need a Bivens action because there are other opportunities to sue government contractors, see Boyle. That's correct, Your Honor. But it was saying that there are other opportunities to sue them because claims against them under state would not be preempted. That's all that the Court was saying. That's why it cited the Boyle decision, which is fundamentally a preemption case. The Court did not address in that footnote other defenses that might be available to contractors. It certainly did not address, in that case, contractor immunity under U.S.C. I'm sorry. No, go ahead. Contractor immunity under U.S.C. applies unless a contractor violates both federal law and the government's explicit instructions, or unless the contractor exceeds the authority that it has under a validly conferred contract. And it can be ruled that the Court went on to say that contractor immunity is indeed qualified immunity. So in instances where a contractor violates a clearly established right or clearly established law when performing the government's work, it would not be subject to immunity. But absent those three circumstances, contractors were immune. And the Boyle preemption doctrine doesn't factor in. There are times when Boyle might apply and years they wouldn't. Are you aware of a case where a contractor has been given derivative sovereign immunity when the government itself has waived sovereign immunity? All the cases I see talk about sharing the immunity of the government. But if, hypothesizing, there were findings here that this fell within a waiver of sovereign immunity, I've found no case. Have you found one? I'm not aware of a case like that. But I do think that your question, Judge Millett, sort of underscores the point that I think that Judge Williams was making, which is that the claims in this case directly contravene Congress's judgment in the Privacy Act. In the Privacy Act- All right, so my question is if, just assume hypothetically, all right, so if there were found to be, the case was found to be within a waiver of sovereign immunity, because part of your argument was go sue them, not us, right? That was part of your theory, that this being set up to go sue the government, not us. But I'm not sure where you're deriving your sovereign immunity from. They're not actually claiming immunity. You're not sharing it. Campbell Ewald talked about sharing it. Polarski was all about sharing. And even in Boyle, it was, look, the government wouldn't be held liable. You're their arms and feet. You're not going to be held liable. So this sets up a disconnect, your theory in this situation, if we find a waiver. Well, so sovereign immunity arises from common law. That is the basis for it in Nearsley. That is the basis for it in Campbell Ewald, too, just as recently as 2016. The federal government can always, by statute, waive its sovereign immunity. It can also waive its sovereign immunity from its contractors. But that's exactly the opposite of what Congress did in the Privacy Act. In the Privacy Act, Section 552A-G, Congress said there is a limited right of action against the government under limited circumstances. So if you had a situation where, get out of this case, we don't want to talk about this case, but if you had a situation where there was a case fell within the terms of the waiver, they had the type of violation, which includes at least willful, as that's defined, failure to secure the information, and they had the damages that are required. So the government's not immune in that case. Right. On what basis would there be contractor immunity for being part of the arms and feet of the government in the whole process? I would submit that, in that instance, the court should look to the text of the statute to see if the statute extends the waiver to contractors as well as the government. The immunity that the government and its contractors have don't overlap. Does it? I'm sorry, Judge Tatel? Does it? What does the statute here say? Oh, the statute. You should look at the statute. Does the statute extend immunity? It does not. So we don't need to look at that. What's the rest of your answer to Judge Moore? Based on a hypothetical case where the privacy ad waiver is clearly applicable. In other words, the government's waived its sovereign immunity. If the government had waived its sovereign immunity and also the immunity of its contractors, No, no, no. You're adding that. Just stick with her hypothetical. Sure. That is, all we know is the privacy ad waiver applies. That's all we know. I would acknowledge that that would be a more difficult case than this one. Isn't that this case if we agree that they can pursue their privacy ad claim against the government? I would submit that it is not the case because the Privacy Act only allows a limited right of action against the government. My question was, assume we think plaintiffs can pursue their privacy. I'm just repeating Judge Moore's question, which is, assume we find pecuniary damages, assume we find that the district court is correct about knowing and willful. That's the hypothetical we both of us are asking. Then, what's the basis for it? And in that case, the government would be the only proper defendant. I would come back to what I said at the outset. You don't want to answer her question, do you? Maybe I don't understand the question. Yes, derivative sovereign immunity is greater than sovereign immunity. It's usually less great. It's qualified immunity. Exactly, but in your hypothetical, when the government can be sued, the contractor still cannot. Well, Congress can authorize suit against the contractors, but the contractor in this case is acting as an employee of OPM. Congress doesn't have to. I'm sorry. OPM's employees could also not be sued. I thought the suit against contractors were also under state law in this case. They are. They are. Thank you. The basic theory of the statute, so far as relevant here, has a lot of basic theories, that agencies can farm out their custody of data, and they must impose on the farmee the same obligations to which the agency is subject. And I guess one intuitive reaction is that something which exposes the farmee to much greater liability than the agency would be distorts the decision-making that Congress intended by the statute for an agency as between doing it in-house and farming it out. That's right. And this is a concern that was raised by the Supreme Court in Fulaski, that contractors performing the same role that the government performs would be left holding the bag for all liability. I don't know. Fulaski was about giving contractors the same immunity. That's why they're going to be left holding the bag. It's the same immunity that the government was going to have. The government had it there, or the government agents currently would get qualified or absolute immunity depending on the case. And the argument was, well, the contractor needs to have that same protection. Again, I think that Congress can be specific when it intends to have a waiver that is only for the government and when it intends for it to be for its employees, or when it intends for it to be for its contractors that are acting there differently than its employees. But I think the point that I want to emphasize that comes to mind from Jeff Lewis... Emphasize your point. Okay. The very thing that the plaintiffs challenge in this case, Key Points Network Security, is dictated by OPM under the Privacy Act. Key Points' obligation is to abide by the standards that OPM commands under subsection E10. It is not responsible for coming up with those standards. Thank you. Thank you, Your Honor. Did Mr. Patterson have any comments? No. Okay. You can take two minutes. Thank you. Appreciate your indulgence, Your Honor. A few quick points. First, Doe v. Chau, Note 10, explicitly references a credit report as a potentially reasonable expense under the Privacy Act, which covers Kelly Flynn's situation exactly. Also, Plaintiff Lozar paid to have a credit freeze listed, which is undisputed that OPM's coverage did not provide a credit freeze. So that's an additional plaintiff. There are others as well. With respect to the willful and intentional issue, we're not saying just that OPM didn't act quickly enough to address discretionary issues. We're saying that there were federal requirements that they did not implement year after year, and they willfully and intentionally did not do that. As Paragraph 152 of the complaint explains, in 2015, their own inspector general said our repeated warnings appeared to garner little attention at the agency, and, you know, effectively we told you so. So we're not just saying that ourselves. And then finally, on negligence, it would be extraordinary if the contractor had greater immunity than the government. There's no case that holds that. And also, the Brady case explicitly said contractors aren't immune. Are you suggesting that the actual damages rule embedded in the statute extends to the contractor? No, Your Honor, because the contractor's immunity is only for things that the government directed it to do. So if the contractor acts negligently, its immunity is completely withheld. Completely or completely outside the Privacy Act. Right, we're not suing them under the Privacy Act. I understand that. Right, so the Privacy Act is irrelevant. It's really asking for a theory of liability much broader than the Privacy Act. Yes, and that's going to be true. The actual damages requirement. Right, exactly. We're suing under these common law claims, which it would be extraordinary under this judge-made doctrine to say that all of these private rights of action, that they indisputably would have if they had been contracting with a defendant in a TIAS, for example. We could bring all these claims against them. They're saying just because they contracted with the government, we can't. So, thank you, Your Honor. Thank you. We will take a brief recess. Stand free. Stand free. Stand free. Stand free. Stand free. Stand free. Stand free. Stand free. Thank you. Congratulations. Take number 17-6217 and leave you as officer of personnel management. Mr. Charles be at 1 and miss Garvey have the food. Good morning and may it please the court for a shot for appellate national treasury employees union and the individual balance in this action. Your honors without duplicating any of the standing discussion from earlier this morning I just want to underscore two of the ways in which ATS directly addresses two of the concerns raised earlier today by the court and after doing that I'd like to move into the merits of our constitutional claim and then discuss the relief that we seek. Earlier this morning there was discussion on shouldn't there be consideration given to the ratio of alleged incidents of identity theft linked to the breach particularly given the passage of time since the breach. In your allegation your theory is that the constitution gives you a right not to have your information flow out right and if that's the right it doesn't really make any difference whether anybody does anything with it. Your honor we have two theories of standing that have been set forth in our briefs one of which is the theory that you mentioned on pages 14 to 17 of our opening briefs we set forth a theory of standing that's tied directly to our constitutional claim. The merits of our constitutional claim is that when the sophisticated actors after a decade of OPM's reckless indifference of securing this IT security infiltrated OPM's data systems and stole our members' personal information at the moment of that theft our members' constitutional rights were violated and they lost their sense of security and OPM's state keeping information. But if the right so defined the standing seems to fall on pretty ineluctable. We have to assume the correctness of the substantive claim. Yes which the scoring does at the 12B1 stage so we would agree with your honor that theory shows our standing here and we would further note that we have also alleged a theory of standing under ATIA's which is set forth at pages 17 to 35 of our opening brief. I will then move to the merits of our constitutional claim then. Your honors we have shown in our brief that the consensus the strong majority view of the courts of appeals is that there is a constitutional right to informational privacy. We further show that four courts of appeals have construed the right consistent with its nature and purpose. Aren't all those cases situations where there was intentional disclosure by the government? Yes your honor those are cases where those cases are instructive though is that they show that even after information has been collected by the government even after inherently information inherently personal information has been given up the rights protections persist and the government at a minimum cannot disclose that information to those without the authority to view it. There is an affirmative obligation that courts have imputed on the government based upon the right alone not to disclose that information to those who can't see it. The government in its papers would resist even that in its view after collection occurs the rights protections if any end they do not persist but these court of appeals cases show that indeed the courts of appeals believe that the rights protections endure even after the collection occurs. If the government cannot disclose it to those without the authority to view it it must follow that it also can't simply leave that information recklessly consciously unsecure that leaving all doors and windows open is effectively the same as turning around and giving that information to somebody who can't view it. And we believe that this circuit's Fifth Amendment jurisprudence allows for the court to accept the validity of this theory. This court has concluded that . . . Let me ask you a question about one way to look at this case. So if you read these three cases, Nass and Nixon and Whale, what the court did in all three of those cases was in each case where it said, well, there may be the kind of constitutional right you're seeking, the court said, we don't have to reach that question because number one, the government has a very strong interest in collecting the data and keeping it and number two, the government through various steps has shown a high degree of sensitivity towards protecting the data, but that's what all three of those cases did. So if you think about that framework and apply it to this case, what you have is a strong government interest in collecting the data because obviously it needs the data for employment purposes and it's been sensitive to the privacy interest by passing and acting the Privacy Act. And in Nass, the court says time and again, our cases have recognized that the government has a much freer hand in dealing with employees than it does when it brings its sovereign power to bear on the citizens of others. So you've got a situation here where it's not even like Whalen or Nixon where the government was ordering the submission of the data. Here it's the government's acting as employer. So what's wrong with thinking about the case that way? Your Honor, that's an appropriate way to think about the three Supreme Court cases and the collection context generally, where in the first instance the government seeks information that it legitimately needs. Courts and the Supreme Court have understandably said, we're going to take the government at its word. The Privacy Act exists. We're going to take the government at its word that it will protect this information. And thus the court has said in Nass of Unelsa, for example, the Privacy Act allays any constitutional concerns. Here we are not at the collection stage, and that sort of premise that we're going to take the government at its word and we... So your point is the Privacy Act failed here? The Privacy Act failed. But has it yet? I mean, the Privacy Act provides... Suppose we think in the first case the plaintiffs can pursue their case and suppose, you know, they survive summary judgment and win. The Privacy Act... If you follow the Privacy Act, the plaintiffs were better men. So I mean, why? Your Honor, the Privacy Act was not only insufficient at the front end, it's insufficient at the back end. The... Our front end, the other side, essentially said that OPM is simply delayed in taking action to correcting this IT security. We would disagree strongly with that. You don't respond to Judge Taylor's question about the Privacy Act as a complete system, including the remedies for agency breach. Your Honor, that's where I was going. In terms of the remedies, that the... Our members' inherently personal information remains at substantial risk of additional breaches because OPM still has not done... You mean because you can't get an injunction under the Privacy Act? Is that your point? Exactly. The Privacy Act remedies would not... Is that right? Am I right about that? I don't... Well, the injunctive... The Privacy Act allows for damages for very specific injunctive relief that wouldn't apply here. Access to your personal records, an amendment if there's an error somewhere in your personal records. In the Privacy Act case, the court couldn't order... Couldn't enter an order requiring the agency to comply in the future. Your Honor, I'm not aware of a case in which that type of injunction... I was just asking the question. Your... So your point is that the remedy under the Privacy Act is not adequate? Yes. In other words, to put the question back in the framework I asked you about, you would say, well, the government hasn't been sufficiently sensitive to the privacy interests of the state because it's passed an inadequate statute, right? Is that your point? That is our point, Your Honor. And just to underscore the common sense relief that we seek, which is not available under the Privacy Act, you know, our view is that this loss of security we've talked about... Excuse me. Do you agree with me when I quoted this sentence from NASA that there is this fairly significant difference when we think about this constitutional question between a situation where the government is acting as an employer as opposed to when it's acting as a sovereign? That is right, isn't it? It is a difference. I mean, here our employees had no choice but to give this inherently personal information up to the government. Well, they didn't have to. They didn't have to apply for a job. That's the whole point of these cases. Well, I mean, if they wanted to serve the public as they... I hear what you're saying. Yes. That's the difference between the government acting as an employer and the government acting as a sovereign. It's not imposing an obligation on citizens writ large. It's imposing an obligation only on people who applied for government benefit here government applying. That's the difference. That's correct, Your Honor. Yeah. Well, I thought the information here included people who may have... You may not represent them. I thought the information at issue in this breach here included people who had... and didn't get them, were never employees, or their spouses, or their children, or the people with whom they had intimate contacts. So, are there... Now, you're only representing the employees, but just so... Do I have the facts right as to the scope of the information that was put at risk here, allegedly put at risk here? Yes, you do. Your Honor is absolutely correct that the breach involved applicants, employees, federal contractors, information related to family members and acquaintances. Do federal contractors fill out forms like this as well? Yes. Well, there are two different breaches. There was the background investigation file breach, and there was the personnel records breach involving names, addresses, social security numbers. I'd have to go back to my complaint, but I believe the federal contractors were involved in at least one of these breaches. I wasn't sure from your brief. There were two possible standards you were arguing the government is subject to, or one. Actually, if one is absolute liability, so the failure to protect, any failure to protect the breach of the right, you wouldn't have to get to the question of extreme negligence. Your Honor, what we're advocating is that where there's conscious or reckless indifference in securing inherently personal information, so not our personal information, just that subset of inherently personal information, and that conscious or reckless disregard leads to the targeted theft of that information. So that's the single measure of the government's duty. Yes. I'm just trying to understand where you're taking this. So the, I think it was about the collection of information, but the, are you, is the alleged constitutional violation here a storage violation, or are you treating it as a disclosure, as in they are effectively responsible for the disclosure? I'm not sure which, how you characterize the government's relevant conduct here. We characterize it, Your Honor, as facilitating the theft that occurred, and they facilitated the theft through their nearly one decade of reckless indifference. So that a failure to store, they collect the information, they store the information, and sometimes they disclose the information. And so are you in the, you're not challenging collection here, are you challenging storage when you say they made it possible for this to happen, they didn't store it securely, or are you offering a theory in which the government was sort of so willfully indifferent it could be charged with effective, with disclosure of this material? Your Honor, the answer to your question is storage. In storing information, they were recklessly indifferent. You're not saying that it was disclosed, that their conduct was so negligent or reckless that it constitutes a functional equivalent of a disclosure, you're in storage. Yes, that's the analogy we draw using the full court of appeals cases, applying the right in the post-collection context. I see I'm past my time. There's nothing further. Thank you. We have some government? Ms. Carson? Good morning, may it please the court. I'd like to pick up where we left off with the constitutional theory as the plaintiff Before you get to that, can I just ask you, if we think this standing in the first case because the plaintiffs have plausibly alleged a risk of identity theft, is there any basis for treating this case differently? In terms of standing? So, in terms of standing to the extent that they have separately alleged that they're at a cognizable risk of future identity theft, we think that claim is too speculative? No, no, but I'm saying suppose we don't think it's too speculative in the first case. Suppose we think plaintiffs have standing in the first case. Is there any way to distinguish this case from that one? In other words, would you concede that if we think they have standing in the first case that they do have standing here? It's just a hypothetical. No, and of course we don't think they have standing in the first case. I know you don't, that's why I said it's a hypothetical. So the same reason that we think they don't have standing here and here is the relief that they're seeking. No, no, I just don't understand why we do have standing in the first case. How can you, why would this case be treated any different? Because of the relief they're seeking, Your Honor. Because of what? Because of the relief that they are seeking. No, I'm talking about standing. And I'm speaking to standing because here what the plaintiffs have to show is not only that they have a cognizable risk of imminent future identity theft, essentially on the bare assertion that a Social Security number was exposed. You're resisting my hypothetical. No, I don't think so, Your Honor. Assume I don't think it's just a bare assertion, that it's enough for injury. So, but here, because what they're asking for is judicial superintendents of OPM's data security, lifetime credit monitoring, and an order prohibiting OPM from storing their information electronically. They would have to show that that relief non-speculatively redresses their asserted injury of future identity theft. And so that's why, although we think, and I'm happy to explain, that even without getting to the injunctive relief that they've asked for, that their claims are too speculative to support standing. Here, there's a further layer of speculation. I mean, it's in part the assumption that a court could effectively impose a due date, monitor a due date on agencies to improve their data custody. Well, you may think that courts are still designed for that. They're capable of doing it. Why is that so speculative? Because, Your Honor, what they would be saying is that the court's ongoing superintendents of OPM's data security systems goes in some way to redress their fear of future identity theft based on the incidents that have already occurred. That's why, even if you think that the plaintiff in the first case has standing, because of the different form of relief that the plaintiffs in this case are seeking, there's an additional level of speculation required and just a missing next step. You're talking about redressability, right? Yeah. In that stage of the standing analysis. Well, I don't think you can strictly confine it to redressability because, of course, consider the request for lifetime credit monitoring. What they would have to show is that they remain, for the rest of their lives, at an imminent risk of identity theft. That's all they've said there. Imminent doesn't always mean time. It just means high probability. And so, when you talk about social security numbers, which you can't change, date of birth, which you can't change, fingerprints, which you can't change, which you can't, but at that type of, this is the core of the stuff that, especially social security numbers, can create a risk of identity theft. And that's not going to change over time, is it? So, why would the risk go down? Because it's just a further level of speculation that the plaintiff's allegation to the patient. Why is it speculative? Usually it's speculative because we think risk dissipates. But Congress thought at least 10 years was the window here, so why wouldn't, why don't, what makes you think that the risk, that your social security number, name, and date of birth will be used to commit identity theft goes down at all, as long as you're alive? Well, of course, Your Honor, it's not what I think is what is incumbent on the plaintiff to allege in here, just to take a step back. Well, they allege that. They allege that. Well, that is all that they allege. They allege only. I'm trying to respond to your question that as to, just as to the long-term, the lifelong credit monitoring. Yes. As to that. You said it's just speculative that there'll be, that their allegations are insufficient because they were speculative and stretched out that long. And I'm trying to figure out why you gave that answer. Why does it become any more likely that your social security, less likely that your social security name, social security number, name, and address can be used for identity theft in five years rather than this year, 10 years rather than this year? What is the nature of the information here they're arguing about? My point is simply that it requires an additional level of speculation that you don't have in the first case. And I think it's useful here to look at this plaintiff because it requires speculation from the court that not only at the moment of the data breach, but even after the passage of time, notwithstanding, Judge Williams, as you observed, the general incidence of identity theft in the U.S. population, that there will be an instance of identity theft that occurs that is traceable to this breach. That's a cognition issue. That's not a pleading issue. Well, you can conceive of it. No, you can conceive of the cognition element. No, it could both be liable. I mean, another breach happens and that will have to be disputed in litigation as to who is responsible for it. I think it really would be helpful for me to take a step back and explain why even setting aside the nature of the release that they've sought, which I do think requires an additional level of speculation, but forgetting that for the moment, why there isn't standing here. It's not enough simply to say that a Social Security number has been exposed. The plaintiff has to connect that to a cognizable risk of identity theft and they haven't done that here. What they've done is they've offered one plaintiff who experienced an instance of identity theft, including of information that OPM didn't have. I just don't understand why you're saying that. I mean, these are Social Security numbers. These are the closest thing Americans have to an identity card. And the loss of a Social Security number has enormous consequences to people. But it doesn't follow... And they've alleged that their Social Security number's addresses and names have been taken. And it doesn't... At the motion to dismiss stage, I can't imagine what else they have to allege to credibly or plausibly claim a risk of future damage. It's far more serious than a credit card. And in Addias, who were in that case as well, we found that's the issue. This is much more damaging than a credit card. Of course, the court knows what it meant in Addias to members of the Supreme Court. No, no, no. The opinion means what it says, not what the two of us here think it says. Well, what the opinion said, if it were sufficient in Addias for this court to have concluded that the fact that Social Security numbers are exposed means the plaintiff had standing, much of the court's analysis would not have been necessary. The court would have said the district court was wrong to think that the Addias plaintiffs had not pleaded the theft of Social Security numbers. The end. There would have been no need for the court to go on to evaluate whether it was possible to infer under the circumstances of that case that there was a cognizable risk of identity theft that might follow. And this only makes sense... I'm only speaking for one member of the panel here, but I just... You've got an uphill battle on that. Can I give you a hypothesis? Suppose there's a remand and suppose that the court determines that as of the moment when the complaint was filed, the moment as of which standing is assessed, there was a reasonable concern that this breach would end up causing damage. Damage that could have been prevented by better security measures. Suppose that's determined by a court and let's assume that it would stand, however, here. Does that eliminate the speculative problem that you're speaking of? No, Your Honor, and I think that's in part because the way that you've framed the district court's analysis in your hypo is too general because what any plaintiff has to show is damage to him or herself that entitles him or her to a specific form of relief, and what the NCEU plaintiffs have offered here... The merits claim here is that the mere breach, at least if it was extremely negligent, takes away a constitutional right regardless of any other effect. Right? If that is correct, what is the problem? It's quite an if. It's a big issue, Your Honor, particularly in light of the opposing counsel's concession that they only have to rely on cases where there is intentional disclosure, intentional affirmative disclosure, and that's not what they're alleging here. But even taking that if, with the plaintiffs, and here I'm dealing with a constitutional claim, and I don't want to forget to come back to the theory about future risk of identity theft, but as to their constitutional claim, they would have to show that the relief they're seeking would redress their injury. And they have never explained how an order, for example, acquiring a court to assume management over OPM's data security systems would redress the sense of security that they say they lost irretrievably at the moment that the breach occurred. And so that's why even as to just their constitutional claim, their standing argument fails as a matter of redressability. Now they have a separate problem based on the relief that they're seeking when it comes to their standing argument as to the risk of future identity theft. A TIA, as I was discussing with Judge Tatel, I submit does not say that it is sufficient any time a social security number is exposed for every affected plaintiff to have standing no matter what happens afterwards. And that is really the theory that this court would have to embrace in order to rule either for the plaintiffs in the first case or for the plaintiffs in this case. The plaintiffs in this case have the further problem of needing to show how the relief they seek would redress the risk of identity theft they say arose from the incident that already happened. I understand that point. I take your point, but let me ask you a different question. So when I ask counsel for a plaintiff why we just shouldn't think about this case like the courts did in Nixon and Oylen  the other case. Nassau? Yeah, Nassau. You know, he gave sort of two answers that I want to ask you about. Number one, those cases when the court was saying the government was sufficiently sensitive to the privacy rights of the state, those were predictive cases. In other words, there hadn't been any breaches. The government was saying, well, the government has taken action to protect against future losses. Here, we're dealing with a case where that's actually happened. And the second difference is that we had allegations here of reckless behavior by the government, not just negligence. Why isn't that enough to distinguish that and for a court to rule that what we have here is a violation of a constitutional right to informational privacy? So, a couple of responses. First of all, on page 168 of the Nassau v. Nelson opinion, the Supreme Court explicitly acknowledged the possibility that data breaches might happen because security measures would fail and concluded that was not a basis to find a constitutional violation. As to their reckless indifference point, I think this only underscores the extent to which their constitutional claim is an attempt to end-run the Privacy Act, which requires willful and intentional conduct and the only cases to which they point involving willful or intentional It's only an effort to end-run the Privacy Act if there's no constitutional right. If there's a constitutional right to informational privacy, then it's not an end-run of the Privacy Act. Well, as this court observed in the Fraternal Order of Police v. Williams case, we're not dealing here even with the sort of decision that is ordinarily understood to implicate susceptive due process or to rise to conscience-shocking levels. I mean, we're dealing here with programmatic decisions, not decisions that are affirmatively intentionally intended to For example, one of the cases based on the allegations of the complaint is government recklessly allowing personal information to be stolen. Those may be their allegations but of course, as the court knows, allegations must state claims. And here, the cases on which they rely do not come remotely close. Well, Nelson, when he talked about data breach, only said that that risk is no reason to the collection of information, not the storage or the functional disclosure, right? I don't think you can read it that narrowly, Your Honor. That's the issue in the case. I'm never deciding with the question. That was the issue in the case, but of course what the court was talking about was the informational privacy right and the extent to which the Privacy Act guarantees on their face remediate concerns about protected intrusions into the privacy of information about which the Constitution might and the court assumes only Arguendo has nothing to say. So it recognized the forceful recognition to the government employee's interest in maintaining the confidentiality of sensitive information in his files. And so I just concluded this is about inquiry. You don't dispute that the willfulness standard includes reckless disregard. Your Honor, we haven't briefed to that question and I think the plaintiffs regard it as different and so we are assuming and taking it sort of on their terms. They say that the Privacy Act requires intentional and willful behavior but that their claims are about reckless indifference. And so our point is simply that no court has recognized a right within several steps removed of the rights that they are asserting here as they have been quite candid about pointing out and here we have the Privacy Act and we have a circumstance while although it's true that there was an intrusion the Supreme Court has recognized that that alone does not vitiate the role of the Privacy Act in protecting any rights that might have constitutional dimension. Okay. Thank you. Thank you. Did Mr. Shaw have any time left? No. Okay. You can take two minutes. Thank you, Your Honor. Just three quick points. Your Honor had asked about the government as an employer versus the government as a sovereign and how that might affect the analysis here. While the government has a freer hand in collecting information as an employer versus as a sovereign when it comes to protecting information once the government takes an inherently personal information that is provided with a legitimate expectation of confidentiality once that occurs But the court has articulated that same distinction in employment cases for example where it said that government employees have lesser personal rights than others and Your Honor is correct as to that line of cases. Our point is that the government cannot act with reckless or conscious indifference That's your distinction. Yes. When it comes to protecting inherently personal information no matter whether that information is collected as an employer It may have more flexibility to collect it. Correct. That's correct, Your Honor. Is there a case that says what you just said? That is it may have more flexibility to collect it but it has this obligation to protect it. Your Honor, Nelson V. Nelson may speak to that because it's a collection case involving federal government employees but I'm not certain As for the relief we see Sorry, I just want you to say that before I What is your best case for your reckless disregard or reckless indifference is sufficient for a constitutional claim? I know a lot of statutory cases that's sufficient for willfulness but what is your best authority for that? Your Honor, we rely on Smith v. District of Columbia in our brief though it's not in a case involving a data breach. That's where this court holds that conscious or reckless indifference can sufficiently shock the conscience to allow a finding that the process has been violated. That's our authority for that point. Your Honor, just on the relief that we seek, the loss of security that we allege affected our members who were affected by the breach. That loss of sensitive security has at least two components. One is that these individuals are now at a substantial risk of identity fraud. Hence the relief we seek regarding the lifetime credit monitoring. But we also allege in our brief that they are at a substantial risk of having their information stolen again because OPM still has not OPM is still acting recklessly in securing that information and we cited pages 29 to 31 of our open brief. IG reports as recent as February 2018 saying that OPM still isn't doing what it needs to do. That is why we request things like the an order from a court that OPM reform this IT security and in the interim be enjoined in collecting further information electronically. Thank you. Thank you.
judges: Tatel, Millett, Williams